UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ZANE JOSEPH HERTZ, ) | |
| ) | |
| Plaintiff, ) | Civil. No. 5:22-cv-00128-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| DR. KILOLO KIJAKAZI, *Acting* ) | **&** |
| *Commissioner of Social Security*, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Zane Joseph Hertz seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's administrative decision denying his application for Supplemental Security Income. [R. 1.] For the reasons stated below, the Court will **DENY** Hertz's Motion for Summary Judgment [R. 14] and **GRANT** that of the Commissioner [R. 17].

**I**

Mr. Hertz filed his application for benefits on June 21, 2018, alleging disability beginning on May 27, 2018. [R. 12-1 at 15.] Mr. Hertz alleges disability due to a number of impairments. [*See* R. 12-1 at 60.] He suffers from type 1 neurofibromatosis, hydrocephalus, epilepsy, non-epileptic staring spells, underdeveloped fine and gross motor skills, scoliosis, multiple tumors, hundreds of neurofibromas, sensitivity to loud noises, and hypertension. [*See* R. 12-1 at 60.] His application was denied initially and upon reconsideration. *Id*. Hertz then submitted a written request for a hearing. *Id*. Administrative Law Judge ("ALJ") Neil Morholt conducted a telephonic hearing on June 4, 2021, where Shannon Smith, a vocational expert, testified. *Id*.

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age,

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

education, and past work) prevent him from doing other work that exists in the national economy, he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, the ALJ issued his written decision on June 14, 2021. [R. 12-1 at 25.] At Step 1, the ALJ found that Hertz has not engaged in substantial gainful activity since the application date. *Id.* at 17. Hertz does not have past relevant work experience but has graduated high school. *Id.* at 24. He turned eighteen on the day his application was filed. *Id.* At Step 2, the ALJ found that Smith had the following severe impairments: "neurofibromatosis, type 1; neurodevelopmental disorder; [and] history of seizures." *Id.* At Step 3, the ALJ concluded that Hertz did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, and 416.926)," so his analysis continued to the next step. *Id.* at 18. At Step 4, the ALJ concluded that Hertz has an RFC to "perform a full range of work at all exertional levels," subject to certain non-exertional limitations. *Id.* at 19. Those limitations are:

> The claimant can occasionally climb ladders, ropes, or scaffolds; can be occasionally exposed to unprotected heights; and must avoid all exposure to loud and very loud noise levels. The claimant can understand, remember, and carry out simple routine repetitive tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods before the need for a regularly scheduled break; can have occasional, nonconfrontational interaction with supervisors, coworkers, and the general public; can make simple work related decisions; and the tasks performed must be low stress, which is defined as no fast paced production requirements or involving production quotas.

*Id.* Finally, at Step 5, the ALJ adopted the opinion of the vocational expert that there were a significant number of jobs in the national economy that Hertz could perform. *Id.* at 24-25. As a result, he concluded that Mr. Hertz was not disabled. *Id.* at 25. The Appeals Council found no reason for review. *Id.* at 6-8. Hertz now seeks judicial review in this Court.

3

## II

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**A**

Hertz first argues that the RFC's physical findings are incorrect because they fail to properly evaluate the medical opinion evidence. Specifically, "the ALJ's RFC that states that Plaintiff has no physical restrictions despite his spinal tumors is patently unreasonable." [R. 15 at 1.] He claims that the ALJ incorrectly deemed Dr. Lightener's opinion to be unpersuasive. *Id.* at 11. The ALJ summarized Dr. Lightener's opinion as follows:

> This statement indicates the claimant is not able to lift heavy objects due to tumors in his spine and he must not lift anything more than 10 pounds. The statement indicates he cannot stand for extended periods of time or work in areas with loud noises due to nose sensitivity. She notes he cannot concentrate if there is too much noise or too many conversations in a room. In addition, she indicates he cannot exert himself due to his blood pressure being erratic.

*Id.* at 23. Dr. Lightener stated that Hertz should not lift more than ten pounds because lifting may damage his spine or the tumors on it or worsen his scoliosis. *Id.* at 698. Hertz argues the ALJ improperly found this opinion to be unpersuasive. *Id.*

Under 20 C.F.R. § 404.1527(d)(2), a treating source's opinion on the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Dr. Lightener is Hertz's treating physician but the ALJ rejected her opinion about Hertz's functional limitations because it is "not well supported" and "not consistent with the other evidence of record." [R. 12-1 at 23.]

The ALJ explained that the opinion is not well supported because it is primarily based on subjective reports of his functioning rather than objective support. *Id.* He also stated that the opinion is inconsistent with the other evidence. Some examples include that Hertz has

5

"appropriate strength for his age" and reported "working out." *Id.* at 21-22. Further, the ALJ deemed the state agency determinations, which rejected exertional limitations, to be more persuasive. *Id.* One determination described Hertz's self-reported limitation on lifting to be only "partially credible." *Id.* at 79. His initial determination concluded from the seven strength factors, which includes lifting, that Hertz is capable of heavy or very heavy work. *Id.* at 84.

Ultimately, the ALJ's explanation is sufficiently detailed to enable Hertz to understand why his treating physician's opinion was granted little weight and to permit judicial review. *Wilson,* 378 F.3d at 544; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). And the state agency determinations are substantial evidence supporting the ALJ's decision not to incorporate an exertional limitation into the RFC. This Court's role is not to resolve the alleged conflict in the evidence, but to determine if substantial evidence supports the ALJ's decision. *Ulman*, 693 F.3d at 713. Though there may have been evidence to the contrary, the state agency determinations are substantial evidence that Hertz does not require an exertional limitation, precluding this Court from reversing the ALJ. *Id.* at 714.

**B**

Hertz also challenges the ALJ's treatment of the Psychological Examiner Scott's opinion about his mental limitations. Scott opined that Hertz has moderate restrictions on his abilities to understand, retain, and follow instructions for simple tasks and to sustain attention under time constraints. [R. 12-1 at 610.] And she observed marked (or serious) limitations in his ability to tolerate stress and respond appropriately to others in a work setting. *Id.*

The ALJ found this opinion to not be persuasive. He reasoned that the degree of recommended limitations is inconsistent with the exam and other evidence and relies too heavily

6

on subjective reports. *Id.* at 23. Specifically, he found that "[w]hile developmental delays are associated with his condition, the longitudinal record does not demonstrate marked limitation in any area of functioning." *Id.*

The ALJ sufficiently explained his weighing of Scott's opinion. Scott herself noted that Hertz has adequate attention and concentration, "logical and goal-directed" thought processes, and adequate judgment and reality testing. *Id.* at 608. In addition, the state agency determined that Hertz has the capacity to "understand and remember simple instructions and procedures requiring brief initial periods," "sustain attention, concentration, effort and pace for tasks requiring little independent judgment," and occasionally interact with others in a non-confrontational manner at work. *Id.* at 83. The ALJ further explained that the degree of Scott's opinion on Hertz's limitations is inconsistent with the fact that he earned a high school diploma and is a hard worker. *Id.* at 23. This builds "an accurate and logical bridge between the evidence and the result." *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *15 (S.D. Ohio Aug. 31, 2011).

Substantial evidence supports Hertz's RFC. It incorporates a number of limitations related to his mental functioning, many of which are consistent with Scott's observations. It limits his noise exposure, states he can do "simple routine repetitive tasks in a routine work setting having minimal variations and little independent judgment" with regular breaks, limits his interactions with others to be occasional and non-confrontational, and states he can conduct low stress tasks and make simple decisions. *Id.* at 19. Hertz does not explain what additional limitation should have been included in his RFC based on Scott's opinion. The ALJ had a sufficient basis to consider Scott's opinion unpersuasive and substantial evidence supports the resulting RFC.

7

## III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Hertz is not disabled is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Hertz's Motion for Summary Judgment [R. 14] is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment [R. 17] is **GRANTED**, and;

(3) **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 20th day of June, 2023.

Gregory F. Van Tatenhove
United States District Judge